**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**MIDDLE DIVISION**

| | | |
|---|---|---|
| **PLATINUM PROGRAMMING AND DIAGNOSTICS, LLC,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No.: ______________________** |
| **ZACK STEWARD AND GREYSON SMITH,** | ) | |
| **Defendants.** | ) | |

## VERIFIED COMPLAINT

Plaintiff Platinum Programming and Diagnostics, LLC ("Plaintiff" or "Platinum"), by and through counsel, files this Complaint against Defendants Zack Steward and Greyson Smith (collectively, the "Defendants").

## INTRODUCTION

1. Platinum is a fast-growing specialty auto-electrical service provider who provides its confidential information and trade secrets to select employees. Those employees then use that information to provide necessary services to body shops across the country that help ensure compliance and safety for vehicles, drivers, and passengers.

2. Platinum invests significant money and valuable confidential and proprietary information that constitutes trade secrets under Tennessee and federal law in certain employees. It does so to develop employees so it can continue growing its customer base, especially as it expands in new markets, and relies on its employees' loyalty and employment agreements when doing so.

3. Once employees have this sensitive information, Platinum's training, and accompanying equipment, they are capable of deploying Platinum's proprietary processes on

vehicles with little further oversight or direction from Platinum. This is by design – Platinum trusts its employees in the field to administer its process without constant direct oversight.

4. In order to protect this sensitive information, Platinum requires employees with access to it to execute agreements that contain significant legal protections for Platinum. Defendants in this action flagrantly and intentionally breached those agreements for their own personal benefit, including using Platinum's confidential information to receive training, steal Clients and Potential Clients, and perform services in Platinum's name while retaining all of the funds and related (valuable) vehicle data for themselves.

5. Platinum first learned of Mr. Smith's misconduct in September 2025, but Mr. Smith assured Platinum that the instances in which he performed unauthorized work for his own benefit were minor, one-off favors done for friends and family. He further assured Platinum that these instances were not financially significant, reaffirmed his commitment to Platinum, and proposed not to engage in that conduct again. Platinum relied on these representations to not terminate Mr. Smith.

6. In January 2026, Platinum learned that Mr. Smith lied—and that his disloyal and breaching conduct extended to multiple Clients over several months. The full financial impact of his misconduct is still unknown. Based upon these circumstances, Platinum terminated Mr. Smith, and informed Mr. Steward – with whom Mr. Smith maintained a close personal relationship – that he was under investigation for misconduct.

7. In February 2026, Platinum learned that Mr. Steward had also engaged in disloyal and breaching conduct related to multiple Clients over several months. As with Mr. Smith, the full financial impact of Mr. Steward's conduct is still unknown. Upon making this discovery, Platinum explicitly told Mr. Steward to retain all information for services he performed using Platinum's

tools and/or for Platinum's Clients and Potential Clients, but Mr. Steward *intentionally erased the relevant data* before returning Platinum's equipment on which that data was stored.

8. Based upon the information available to Platinum as of the filing of this Verified Complaint, Platinum reasonably believes that this misconduct – which violates Defendants' written employment agreements, federal law, and Tennessee law – is ongoing.

9. Defendants – who had no experience in Platinum's specialized services nor its Clients and Potential Clients prior to working for Platinum – have used, and upon information and belief continue to use, Platinum's confidential and trade secret information to intentionally steal money, Clients and Potential Clients, and market share from Platinum in violation of the law and their Agreements.

## PARTIES

10. Platinum is a single member, member-managed foreign limited liability company, with its principal place of business in the state of Texas. Platinum's sole member is a resident of Texas.

11. Upon information and belief, Defendant Zack Steward ("Steward") is an individual resident of Missouri.

12. Upon information and belief, Defendant Greyson Smith ("Smith") is an individual resident of Tennessee.

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction of this cause under 28 U.S.C. § 1132 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

14. Alternatively, this Court has subject-matter jurisdiction of this cause under 18 U.S.C. §§ 1832 and 1836 because it arises under the Defend Trade Secrets Act ("DTSA"). Platinum's state-law claims are related to its DTSA claims such that they form part of the same case or controversy, and this Court has supplemental subject-matter jurisdiction over them pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this Court because each Defendant agreed to resolve disputes in in this Court in their employment agreements, which are discussed fully below.

16. This Court has personal jurisdiction over Mr. Steward because he personally availed himself of the privilege of doing business in Tennessee, and that availment is directly related to this litigation. This Court also has personal jurisdiction over Mr. Steward because he submitted to its jurisdiction through execution of the agreement at issue in this litigation.

17. This Court has personal jurisdiction over Mr. Smith because he is a Tennessee resident, because he personally availed himself of the privilege of doing business in Tennessee, and that availment is directly related to this litigation. This Court also has personal jurisdiction over Mr. Smith because he submitted to its jurisdiction through execution of the agreement at issue in this litigation.

## FACTS

18. The individual verifying this complaint is Nelbert Krause. Nelbert Krause is Platinum's owner. Mr. Krause has personal knowledge of the allegations in this verified complaint and is personally familiar with Platinum's business operations and the effect and consequences of Defendants' actions on Platinum.

19. This lawsuit seeks injunctive relief and damages due to Defendants' pre-and post-termination breach of the restrictive covenants and confidentiality provisions governing their

employment by Platinum, their repeated breaches of the fiduciary duty of loyalty owed to Platinum, and their theft of Platinum's confidential information and trade secrets.

20. Platinum is a mobile specialized automotive diagnostic and calibration company that uses mobile technicians in strategic markets without the need for a physical location to travel to its Clients and Potential Clients, which are local automotive body shops, mechanic shops, and auto dealers in order to diagnose, calibrate, and repair the electrical components of automotive vehicles during a vehicle's repair process. Platinum regularly provides these services to Clients and Potential Clients throughout several states, including without limitation Tennessee, Kentucky, and Missouri.

21. Platinum invests significant time and effort in training its mobile technicians in the specific ways to obtain and serve Platinum's Clients and Potential Clients and make a profit using Platinum's equipment and technology, including marketing pitches and strategies; the process of diagnosing, assessing, and calibrating issues with Clients and Potential Clients' vehicles, which requires specialized tools, equipment, processes, login information, and software applications; and billing strategies including discounts, and specific language, coding, and data to maximize profit for Clients and Platinum. This is a specialty service not known by the general public or its Clients and Potential Clients.

22. Platinum provides its mobile technicians with the specialized equipment, including: trucks or vans equipped with tools specifically selected by Platinum for the services it provides and the way it provides such services (some of which Platinum builds itself), targets required for laser refraction used for sensor services, pre-set default features on software (some of which Platinum builds itself), login information to platforms maintained by specific vehicle manufacturers and vehicle restoration procedures, and the training on how to use these tools to

ensure the vehicle is diagnosed and repaired properly for the vehicle and driver's safety, and how to profit from its use, which varies by make and model of vehicle, as well as insurance company.

23. Platinum developed a proprietary billing software and method that it uses to maximize cost and employee efficiency in the repair process without compromising safety or quality of services or vehicle safety or performance. It is one of the only models of its kind in the industry.

24. Key barriers to entry for competitors of Platinum include the specific equipment and software used to process Clients data, the content of sales pitches that incorporate explanations of that equipment, software, and data, Clients and Potential Clients relationships, and effective pricing strategies to Clients and Potential Clients and insurance companies. Platinum entrusts certain specific employees, including Defendants, with this information.

25. Platinum protects this confidential and trade secret information by providing it only to employees who need it, and even then, Platinum provides it only after those employees execute employment agreements which contain specific protections for that information. It then requires those employees to utilize logins for its equipment, software, and to access specific manufacturer's repair processes. Furthermore, it requires its employees to keep all Clients and Potential Clients' information exclusively in Platinum's property through use of Platinum's software applications, vehicles, equipment, cellphones, computers, and email accounts in order to maintain accountability of and protect the use of its sensitive information.

26. Prior to working with Platinum, neither Defendant had experience in performing mobile automotive diagnostic and calibration services. All their expertise in this mobile diagnostics—which requires significant technical training—arises from their employment relationship with Platinum.

27. Platinum trained Mr. Smith for at least one month and trained Mr. Steward for at least three months prior to allowing them to provide services to Clients and Potential Clients. During this time, Platinum made significant investments in each employee and entrusted them with the sensitive information that is now at issue in this litigation.

28. Mr. Steward began working for Platinum as a Mobile Technician on February 1, 2023. On or around that date, he executed the agreement through which he agreed to protect Platinum's information and to refrain from soliciting Platinum's Clients and Potential Clients and to refrain from competing with Platinum (the "Steward Agreement").

29. A true and correct of the Steward Agreement is attached as **Exhibit 1**.

30. At the outset of Mr. Steward's employment, Platinum entrusted him with significant confidential information and trade secrets because that information was necessary for Mr. Steward to perform his tasks as a Mobile Technician.

31. But for Mr. Steward's execution of the Steward Agreement, Platinum would not have entrusted him with this information.

32. On or around August 2023, Platinum promoted Steward to a supervisory role and entrusted him with additional confidential information and trade secrets, including marketing strategies, training authority, increased Clients and Potential Clients' relationships, billing authority, and market development.

33. In this role, Mr. Steward gained access to specific details related to mobile technicians' billing habits and eventually became Mr. Smith's direct supervisor.

34. But for Mr. Steward's execution of and continued commitment to abiding by the terms of the Steward Agreement, Platinum would not have promoted him nor provided him with this additional information.

35. Mr. Smith began working for Platinum as a Mobile Technician on September 16, 2024.

36. On or around that August 24, 2024, Mr. Smith executed the agreement through which he agreed to protect Platinum's information and to refrain from soliciting Platinum's Clients and Potential Clients and to refrain from competing with Platinum (the "Smith Agreement").

37. A true and correct copy of the Smith Agreement is attached as **Exhibit 2**.

38. At the outset of Mr. Smith's employment, Platinum entrusted him with significant confidential information and trade secrets because that sensitive information was necessary for Mr. Smith to perform his tasks as a Mobile Technician.

39. But for Mr. Smith's execution of the Smith Agreement, Platinum would not have entrusted him with this information.

40. Mr. Smith worked under, and was trained by, Mr. Steward.

41. In their roles, Defendants initially performed services on behalf of Platinum serving its Clients and Potential Clients primarily in the Hopkins and Christian County, Kentucky markets as well as the Montgomery, Sumner, and Stewart County, Tennessee markets.

42. In July 2025, Steward moved to Missouri. Platinum authorized Steward to use Platinum's confidential information and trade secrets to build Platinum's presence in the Jefferson, Ste. Genevieve, St. Francois, and Madison County, Missouri markets.

43. Platinum has years of proven success in equipping its mobile technicians with confidential and trade secret information to use in growing new markets, and equipped Steward with that information and the equipment necessary to expand into these markets on behalf of Platinum.

44. In all of the markets entered and Clients and Potential Clients Defendants interacted with, they were sent to act as, and did act as, the face of Platinum's business for that market and/or Clients/Potential Clients, wearing Platinum's branding, relying on Platinum's information and reputation, using Platinum's equipment, and making profit for Platinum.

45. In exchange for the work he performed, Platinum compensated Mr. Steward with an annual base salary of $80,000, paid biweekly, and allowed for additional compensation through a bonus structure.

46. In exchange for the work he performed, Platinum compensated Mr. Smith with an annual base salary of $85,000, paid biweekly, and allowed for additional compensation through a bonus structure.

47. As part of its training of Mr. Steward and Mr. Smith, Platinum provided them each with training on specific marketing strategies, sales pitches, products, plans, billing authority, discounts, and also provided Defendants a company truck, laptop, cell phone, email account, access to specialized software, and the specialty tools and resources required to perform this specialty service for Platinum's Clients and Potential Clients and in strategic markets, which totaled approximately $75,000 per Defendant. Neither Defendant had, nor could have had, these things prior to working for Platinum.

48. Section 3 of Defendants' Agreements contains the following language:

> **Non-Solicitation.** While Employee is employed by Company, and for a period of twenty-four (24) months following the termination of Employee's employment for any reason, Employee agrees to the following:
>
> (a) <u>Non-Solicitation of Clients.</u> Employee will not, directly or indirectly, in any capacity, including, but not limited to, as an employee, consultant, or independent contractor, on behalf of Employee or any other person or entity, contact, communicate with, or solicit or attempt to contact, communicate with, or solicit for the purpose of providing goods or services to, obtaining the business of, or serving, working for, or providing goods or services to,

> any Prospective Client or any Client of Company; (i) with whom Employee had any communication during the course and scope of her employment for Company during the twelve (12) months preceding the termination of Employee's employment for any reason; or (ii) to whom Employee provided any goods or services during the twelve (12) months preceding the date the Employee's employment with Company terminates for any reason.
>
> (b) <u>Non-Interference with Clients and Others.</u> Employee will not, directly or indirectly, in any capacity, on behalf of Employee or any other person or entity, influence or attempt to influence any Client, Prospective Client, employee, prospective employee, consultant, independent contractor, vendor, supplier, manufacturer, entity, or person who or which: (1) has had a business or employment relationship with the Company during the twelve (12) months preceding the termination of Employee's employment to divert, direct, transfer, reduce, negatively affect, or terminate any business, service, opportunity, or patronage of Company; or (ii) has been solicited or recruited by Company during the twelve (12) months preceding the termination of Employee's employment to divert, direct, transfer, reduce, negatively affect, or terminate any business, service, opportunity, or patronage away from Company.

(*See* Exs. 1 and 2)

49. Section 4 of Defendants' Agreements contain the following language:

> **Non-Competition.** While Employee is employed by the Company, and for twelve (12) months following the date Employee separates employment with Company for any reason, Employee will not, directly or indirectly, in any capacity, individually or in association with or on behalf of any individual or entity, own, operate, manage, control, work for, provide goods or services to or for, be employed by, or in any manner engage in any Competitive Business (defined below) within any county where Employee has provided services on behalf of Company to a Client during the twelve (12) months preceding the termination of her employment for any reason. Employee agrees that the restrictive territory defined by this Agreement is standard in the automotive diagnostic technician industry and that it is both reasonable and narrowly construed to protect Company's legitimate business interests.

(*See id.*)

50. By signing the Agreements, Defendants agreed that they understood that the purpose of the Non-Solicitation and Non-Competition provisions was to prohibit them from using

Platinum's resources to identify and cultivate relationships with existing and prospective clients for Defendants' benefit or for a competitor of Platinum's benefit. (*See id*).

51. By signing the Agreements, Defendants also agreed to the following provision contained in Section 1:

> Confidential Information. "Confidential Information" means all confidential, proprietary, and/or Trade Secret information, data, materials of Company and its Clients. "Confidential Information" includes, but is not limited to, "Intellectual Property" (as defined below); information disclosed to, obtained by, or known by Employee because of his or her employment with Company regarding plans for research; development; new products and technologies, whether solely human created or machine assisted/with use of artificial intelligence (AI); marketing; sales strategies and volume merchandising; business plans; budgets; financing; unpublished financial statements and information; licenses; prices and costs; suppliers and vendors; products; processes; technologies; services; strategies, including, but not limited to, inventions, product lines, and purchasing; computer software and hardware; names or significance of the Company's Clients or their employees or representatives; Client's preferences, needs, requirements, and service histories, training materials, or other client-specific information; information regarding the skills and compensation of other employees and contractors of Company; Company's training methods, service methods, or techniques; information regarding the Company's Trade Secrets, systems, and procedures; and/or enhancements, improvements or modifications or same. Such Confidential Information is and shall continue to be the property of the Company and its Clients, respectively.
>
> Agreement Not to Disclose. Employee recognizes the Confidential Information is of great value to Company, that the Company has legitimate business interests in protecting it, and that the disclosure to anyone not authorized to receive such information will cause immediate and irreparable injury to the Company. Unless Employee first obtains the Company's written consent, Employee will not, directly or indirectly, acting alone or with others/through others, divulge, disclose, copy, disseminate, publish in any form, make available, sell, transfer, or otherwise use or exploit any Confidential Information of Company, except in connection with Employee's work for Company from whom Employee obtained or accessed the Confidential Information.

(*Id.*)

52. Platinum tasked Defendants with performing automotive diagnostic and calibration services for its Clients and Potential Clients and developing new Clients and Potential Clients and deepening ties with already existing customer networks during their employment.

53. Defendants were aware of the critical role this information and these services played in the short and long-term success of Platinum's business operations.

54. Platinum exposed Defendants to its training and proprietary information and trade secrets, which were developed by Platinum through considerable expenditures of time, effort, and money, only because Platinum relied on Defendants' acceptance of the Agreements.

55. Platinum placed significant trust when it allowed Defendants access to its proprietary information, and trusted Defendants would maintain its secrecy.

56. As employees of Platinum, Defendants owed Platinum a fiduciary duty of loyalty. Consistent with that duty, Defendants were—during the term of their employment—obligated to act solely for the benefit of Platinum in matters within the scope of their employment and were precluded from engaging in conduct adverse to Platinum's interests.

57. While Defendants were still employed by Platinum, and without Platinum's knowledge, Defendants began diverting Platinum's business opportunities and income for their own benefit.

58. Platinum was unaware that Defendants had begun to steal Platinum's business opportunities, confidential information, and trade secrets for themselves while Defendants were still working for Platinum, as Platinum relied on Defendants' previous representations that the only instances were minor, infrequent, financially insignificant, and would not happen again.

59. Defendants continued to receive compensation from Platinum while they secretly stole Platinum's business opportunities for their own benefit.


Case 3:26-cv-00194 Document 1 Filed 02/20/26 Page 12 of 25 PageID #: 12

60. On January 5, 2026, upon discovering Mr. Smith's breaches of his duties to Platinum, previous representation, and Agreement, Platinum terminated Mr. Smith.

61. On January 5, 2026, Platinum (through counsel) provided Mr. Smith with a letter through which it demanded that he immediately cease and desist conduct which does not comply with his post-employment obligations. A true and correct copy of this letter is attached as **Exhibit 3**.

62. Upon information and belief, immediately after his termination, Mr. Smith began performing automotive diagnostic and calibration services for his own benefit in the Tennessee and Kentucky counties where he provided services for Platinum's clients.

63. On or about January 5, 2026, Platinum also advised Mr. Steward that it was investigating his misconduct in violation of his Agreement, duties, and previous representation.

64. Mr. Steward resigned from Platinum on February 5, 2026, and requested that his resignation be effective on February 19, 2026. Platinum informed him that his resignation was effective immediately.

65. On February 13, 2026, the undersigned provided Mr. Steward with a letter through which it demanded that he immediately cease and desist conduct which does not comply with his post-employment obligations. A true and correct copy of this correspondence is attached as **Exhibit 4**.

66. Immediately after his resignation, upon information and belief, Mr. Steward began performing automotive diagnostic and calibration services for his own benefit in the Missouri counties where he provided services for Platinum's clients, including providing services after his employment to Platinum's Clients and Potential Clients.

67. Defendants are providing these services within the restricted time and geographic limitation of counties where Platinum has a client, including, but not limited to the Hopkins and Christian County, Kentucky markets; the Montgomery, Sumner, and Stewart County, Tennessee markets; and the Jefferson, Ste. Genevieve, St. Francois, and Madison County, Missouri markets, in violation of the Non-Compete provision of the Agreements.

68. Additionally, each Defendant has breached his respective Agreement by causing, soliciting, inducing, or otherwise encouraging Platinum's Clients and Potential Clients to terminate or reduce the scale of their business relationship with Platinum, in violation of the Non-Solicitation provision of the Agreements.

69. Platinum has seen a decrease in Clients in the markets serviced by Mr. Smith and Mr. Steward since the Defendants' employment ended.

70. Defendants breached the terms of their Agreements repeatedly both before and after their employment with Platinum. Examples of these breaches include but are not limited to:

a. Performing unauthorized outside work using company equipment, data, and/or Clients and Potential Clients relationships;

b. Intentionally avoiding disclosing outside work when questioned;

c. Removing and/or destroying company data from company devices prior to return;

d. Retaining or accessing company information following termination of employment;

e. Engaging in conduct that threatens Platinum's Clients and Potential Clients relationships and market position built through company investment and training; and

f. Causing, soliciting, inducing, or otherwise encouraging Platinum's Clients and Potential Clients to terminate or reduce the scale of their business relationship with Platinum, in violation of the Agreement.

71. As of this filing, neither Mr. Smith nor Mr. Steward (nor any attorney) has contacted Platinum or the undersigned to inform them that they are or intend to comply with their post-employment obligations. Accordingly, Platinum reasonably believes that they will continue to disregard those obligations without an order from this court enjoining them from doing so.

72. Platinum has a legitimate protectable business interest it seeks to protect through the enforcement of the Agreements and the related causes of action against Defendants.

73. Both Defendants have been, and continue to be, in breach of their respective Agreement, thus tolling the duration of each Agreement's Non-Compete and Non-Solicitation provisions until each Defendant finally stops violating their Agreement, at which point the restrictive covenants commence.

74. The above-described breaches of Defendants' contractual obligations and fiduciary duty have caused damages to Platinum including, but not limited to, the loss of business opportunities and the cost of monies Platinum paid to Defendants while they were stealing Platinum's Clients and/or Potential Clients.

## **CAUSES OF ACTION**

### Count 1 – Breach of Contract

75. Platinum incorporates and re-alleges the factual assertions made elsewhere in the verified complaint and its attachments.

76. Platinum sues Defendants for breach of contract. Each Defendant materially breached their Agreement in a myriad of ways, including (but not limited to) those enumerated in this verified complaint.

77. Defendants' conduct failed to adhere to the required good faith and fair dealing standard underlying all Tennessee contracts.

78. These breaches caused Platinum to sustain damages. Platinum has suffered and will continue to suffer distinct harm in an amount to be established, but which can never be fully repaired by monetary relief alone.

79. Among other things, Platinum is entitled to entry of judgment against each Defendant for specific performance of their obligations under their respective Agreement and money damages.

80. As a result of Defendants' ongoing contractual breaches, and in addition to the irreparable harms warranting injunctive relief set forth herein, Platinum has been and will continue to be injured and seeks recovery of its actual damages, punitive damages, and disgorgement of Defendants' salaries paid to them during any periods in which their conduct violated the Agreements, as well as an award of interest and costs.

<u>Count 2 – Violation of the Federal Defend Trade Secrets Act</u>

81. Platinum incorporates and re-alleges the factual assertions made elsewhere in the verified complaint and its attachments.

82. Platinum sues each Defendant for violation of the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1832 & 1836 ("DTSA").

83. Platinum possessed and possesses the trade secrets and confidential information described above. This information is a "trade secret" as contemplated by the DTSA. This information comprises a great deal of Platinum's economic value and is the basis for much of its consumer goodwill.

84. Platinum's trade secrets and confidential information have independent economic value.

85. At all relevant times, Platinum took reasonable measures to keep its trade secrets and confidential information confidential and secret. These measures include, but are not limited to, prohibitions against the distributions of such information pursuant to the Agreements, monitoring of employees' use of such information, and oral warnings to employees such as Mr. Steward and Mr. Smith to refrain from misusing this information.

86. The trade secrets and confidential information that Defendants misappropriated were intended for use in and were in fact used in interstate commerce.

87. Defendants wrongfully misappropriated and may have disclosed and/or used the trade secrets and confidential information in a manner designed to harm Platinum.

88. As a direct and proximately result of Defendants' unlawful misappropriation of Platinum's trade secrets and confidential information in violation of the DTSA, Platinum has been and continues to be damaged.

89. As a direct and proximate result of Defendants' unlawful misappropriation and use of Platinum's trade secrets and confidential information in violation of the DTSA, Platinum is suffering and will continue to suffer irreparable harm, warranting injunctive relief.

90. Defendants acted willfully, maliciously, and in bad faith in misappropriating and using Platinum's trade secrets and confidential information.

91. As a result of Defendants' conduct in violation of the DTSA, Platinum is entitled to injunctive relief and to recover damages for its losses and unjust enrichment. Platinum is further entitled to an award of exemplary damages.

<u>Count 3 – Violation of the Tennessee Uniform Trade Secrets Act</u>

92. Platinum incorporates and re-alleges the factual assertions made elsewhere in the verified complaint and its attachments.

93. Under the Tennessee Uniform Trade Secrets Act ("TUTSA"), this Court may enjoin the actual or threatened misappropriation of Platinum's trade secrets as well as award damages for misappropriation of the same.

94. Platinum has developed information that is a trade secret as defined by TUTSA including, but not limited to, including marketing strategies, training authority, increased customer relationships, billing authority, and market development for its customer and potential base.

95. Defendants had access to and knowledge of this valuable information during their employment by Platinum.

96. Platinum's confidential and proprietary information, including information related to the marketing strategies it employs and systems it uses to train its employees in highly technical aspects of its operations, are protected as trade secrets under the TUTSA because:

a. Platinum uses this information, which it compiles, in order to provide services to its customers in a nationally competitive marketplace for similar services;

b. Platinum's trade secret information derives significant independent economic value from not being publicly known and from not being generally known in Platinum's trade or business;

c. Platinum's trade secret information cannot be readily ascertained or derived from publicly available information; and

d. Platinum takes reasonable efforts to maintain the confidentiality and secrecy of its trade secret information including by entering into confidentiality agreements with its employees and limiting access to that information

97. Platinum communicated its trade secret information to Defendants while they were employed in positions of trust and confidence by Platinum.

98. Defendants have intentionally used Platinum's trade secret information, including its proprietary marketing and training information, for various improper and unlawful purposes. These include, but may not be limited to, the solicitation of Platinum's Clients and Potential Clients and attempts to induce those Clients and Potential Clients to cease their business relationships with Platinum.

99. Defendants used Platinum's trade secret information for their own benefit. To do so, they accessed Platinum's file storage system which includes virtually all of Platinum's proprietary information. In at least one instance that occurred on or around January of 2026, Mr. Steward deleted this information rather than return it to Platinum.

100. Platinum has suffered damages because of this misappropriation of its trade secrets and by Defendants' use of that information.

101. The misappropriation and use of Platinum's trade secret information is willful and malicious, as evidence by, among other things, Defendants' continued use of this information after receiving notices from Platinum that they must cease doing so.

102. The damages Platinum has suffered because of the use and divulgence of this information as well as the loss of its business expectations are incapable of exact proof.

103. Platinum is entitled to have any outstanding trade secret information returned to its sole control.

104. Defendants' misappropriation of Platinum's trade secret information has caused and will continue to cause reputational damage to Platinum. Platinum's business is built on its goodwill with consumers. The loss of this goodwill and accompanying reputational harm is irreparable.

105. Platinum is entitled to exemplary damages and attorney's fees under the TUTSA.

**Count 4 – Breach of Duty Loyalty**

106. Platinum incorporates and re-alleges the factual assertions made elsewhere in the verified complaint and its attachments.

107. Platinum sues each Defendant for breach of its duty of loyalty that they owed Platinum as Platinum employees during their employment by Platinum.

108. Defendants breached this duty of loyalty in a myriad of ways, including without limitation their use of Platinum's proprietary and trade secret information, repeated violations of the Agreements, and ongoing attempts to enrich themselves at Platinum's expense.

109. Defendants did not undertake these actions in good faith. Instead, they undertook these actions knowing that the actions were against Platinum's business interests.

110. These breaches caused Platinum to sustain damages. This damage may include, but may not be limited to, loss of valuable intellectual property, loss of consumer goodwill, and loss of business opportunities. The egregious nature of this misconduct further entitles Platinum to an award of punitive damages.

**Count 5 – Unjust Enrichment**

111. Platinum incorporates and re-alleges the factual assertions made elsewhere in the verified complaint and its attachments.

112. Defendants were unjustly enriched by the monies Platinum paid to them during the term of their employment.

113. These monies conferred a benefit to Defendants, and it would be unjust for Defendants to retain this benefit under the circumstances.

114. Defendants should, therefore, be ordered to disgorge these monies and repay them to Platinum.

**Count 6 – Declaratory Judgment**

115. Platinum incorporates and re-alleges the factual assertions made elsewhere in the verified complaint and its attachments.

116. Pursuant to 28 U.S.C. §§ 2201-2201 and Federal Rule of Civil Procedure 57, the Court may declare the Parties' rights, duties, and other legal relations of the parties whether further relief is or could be claimed, and the Court may seek a judicial determination of a question of construction or validity arising under a contract.

117. The restrictive covenants contained in the Agreements are supported by adequate consideration and protect Platinum's legitimate business interests.

118. The scope of the restrictive covenants is reasonable, and they do not impose any hardship forbidden by law.

119. A justiciable dispute exists between the parties as to the enforceability of the Agreements, and as such, Platinum is entitled to a declaratory judgment that the Agreements are valid, binding, and enforceable against Defendants.

120. Even if the Court determines that the Agreements are not reasonable in their current form, the Court can and should modify the Agreements and enforce them on terms the Court deems reasonable, in accordance with applicable law.

**Count 7 – Injunctive Relief**

121. Platinum incorporates and re-alleges the factual assertions made elsewhere in the verified complaint and its attachments.

122. Platinum sued Defendants for a temporary inunction – made permanent – precluding Defendants from further use of tis trade secret and confidential information, any future violations of their Agreements, and any further unlawful competition with Platinum.

123. Defendants agreed to abide by the terms of the Agreements, including the Agreements' restrictive covenants and restrictions on use of Platinum's trade secrets and confidential information. Despite these promises, Defendants repeatedly breached the Agreements as explained fully above.

124. As a result of Defendants' material breaches of the Agreements and violations of the DTSA and TUTSA, Platinum has suffered and will continue to suffer irreparable injury absent entry of injunctive relief.

125. As set forth in this verified complaint and in Platinum's contemporaneously filed motion for temporary restraining order and supporting memorandum, Platinum has a legitimate and protectible business interest deserving of injunctive protection, Platinum has a substantial likelihood of success on the merits of its claims, and the public interest will be furthered by enforcing Defendants' promises contained in the Agreements.

126. Unless Defendants are temporarily, preliminarily, and then permanents enjoined from the foregoing conduct, Platinum will be irreparably injured by the loss of its trade secrets and confidential information and loss of consumer goodwill.

127. Defendants should therefore be enjoined from use, possession, or disclosure of any Platinum trade secrets and confidential information. Defendants should further be ordered to surrender all such information to Platinum's custody and destroy any remaining copies or derivatives of that information in their possession.

128. Without such relief, Platinum will suffer immediate and irreparable injury, loss, and damage for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

Platinum respectfully requests entry of judgment in its favor and against Defendants and further requests that the Court:

A. Find that Defendants have breached their respective Agreements;

B. Award Platinum damages in an amount to be proven at trial and as may be appropriate, including, without limitation, compensatory, exemplary, punitive, and statutory damages, plus pre- and post-judgment interest, costs, and attorney's fees to the fullest extent permitted under applicable law.

C. Require Defendants to comply with the terms of the Agreements via an award of specific performance;

D. Enter an order declaring the restrictive covenants in the Agreements to be enforceable because they are supported by adequate consideration, they protect Platinum's legitimate business interests, they are reasonable in scope, and they do not impose any undue hardship forbidden by law;

E. Grant temporary, preliminary, and permanent injunctive relief against Defendants;

F. Tax all costs to Defendants; and

G. Award Platinum any additional and further relief as permitted by law and as deemed just, equitable, and proper by this Court.

Respectfully submitted,

*/s/ Chase Fann*______________

S. Chase Fann (BPR No. 36794)
Casey R. Malloy (BPR No. 38440)
SPENCER FANE LLP
511 Union Street, Suite 1000
Nashville, TN 37219
(615) 238-6300 (office)
(615) 238-6301 (fax)
cfann@spencerfane.com
cmalloy@spencerfane.com

*Attorneys for Plaintiff*

**UNSWORN DECLARATION OF NELBERT KRAUSE**

I, Nelbert Krause, declare as follows:

1. I am an adult resident of the State of Tennessee, am competent to provide the statements herein.

2. I am an owner and member of Platinum Programming and Diagnostics, LLC ("Platinum").

3. I have personal knowledge of the factual statements set forth in the Verified Complaint as a representative of Platinum, and if called on to testify, would competently testify as to the factual matters stated herein.

4. I verify under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the factual statements in the Verified Complaint are true and accurate to the best of my knowledge and understanding.

Executed on this 20th day of February, 2026.

Nelbert Krause

Nelbert Krause